UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KYLE McCONNELL,                              Case No. 09-12603

       Plaintiff,                              Bernard A. Friedman
vs.                                                    United States District Judge

MARGARET SHARPE, *et al.,*                 Michael Hluchaniuk
                                                       United States Magistrate Judge
       Defendants.
_____/

# REPORT AND RECOMMENDATION
# MOTION FOR SUMMARY JUDGMENT (Dkt. 55)

**I.    PROCEDURAL HISTORY**

Plaintiff filed this civil rights action against defendants, alleging violations of her constitutional rights while she was in the custody of the Michigan Department of Corrections (MDOC). (Dkt. 1). This matter was referred to the undersigned for all pretrial proceedings by District Judge Bernard A. Friedman. (Dkt. 12). On August 11, 2010, defendants filed a motion for summary judgment. (Dkt. 55). On August 14, 2010, plaintiff filed a response. (Dkt. 56). Defendants filed a reply on August 27, 2010. (Dkt. 59). On August 27, 2010, plaintiff filed a motion to correct the response and submit the signed declaration of plaintiff, which was granted by the Court. (Dkt. 60). The motion for summary judgment was scheduled for hearing on September 22, 2010, but the parties, in their joint

statement of resolved and unresolved issues, indicated that they preferred the matter to be resolved on briefs, without oral argument. (Dkt. 62). This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **DENIED**.

## II.   FACTUAL BACKGROUND

There is virtually no substantive dispute about the facts in this case. Plaintiff McConnell first entered prison on April 29, 2006. She was released on parole on May 4, 2008, and discharged from parole. (Dkt. 55-3, p. 4). Plaintiff mentioned during her deposition that she has problems remembering what occurred from the evening of December 20, 2006 until she was transferred to University of Michigan Hospital on January 5, 2007. *Id*. at 5. After being discovered unconscious at around 7:00 p.m. on December 20, 2006, plaintiff was transferred to the hospital, "where it was determined that she had suffered a subarachnoid hemorrhage, a stroke and a ruptured basis aneurysm." (Dkt. 33, ¶¶ 34-36). The crux of plaintiff's complaint is that in the 24-hour period before her medical emergency, she had sought medical care, but was refused.

According to plaintiff, her problems started on December 19, at approximately 7:00 p.m., when she was lying on her bed: "And all of a sudden I got this sharp, paralyzing pain in the back of my head that went down my neck and

into my shoulders. I wouldn't move for probably 15, 20 minutes. I couldn't even move." *Id.* at 6; (*see also* Dkt. 56-3). She testified that, "[i]t's not even a headache. That doesn't even describe it. It's just an immense pain. It's indescribable. You can't describe[] it." *Id.* at 9. When she was able, plaintiff went to the officer's desk, where defendant Sharpe was working. *Id.* at 7; (*see also* Dkt. 56-3). She testified that the following events occurred:

> I went up to the officer's desk, and I told her [Defendant Sharpe] – I said, "I had this pain in the back of my head. It's in my neck, it's coming through my shoulders." And I said, "I couldn't move." I said, "But I need help." And she said, "Well, just go take some Tylenol and lay down. You'll be fine. You're stressing over Christmas." And I said, No, I don't think that's what it is." And she said, "Just go lay down. I'm not calling healthcare. You're up. You're walking. You're okay. Go lay down." So I did.

*Id.* at 10; (*see also* Dkt. 56-3). According to plaintiff's declaration, she told defendant Sharpe about what had happening to her while lying on her bed (being unable to move for 15-20 minutes and having sharp, paralyzing pain), that she was still suffering headaches, nausea and blurred vision, and wanted to go to health care. (Dkt. 56-3, ¶ 4). The following is also taken from the declaration of plaintiff:

> 5. After 10:00pm, I went back up the officer's desk since there had been a shift change. By then the pain was in both my head and my back. My eyes were getting blurry. I felt nauseated, dizzy and as if I was looking out of a fish bowl. I told the night officer what I felt and asked to be sent to health services. This officer stated that there was nobody at health care at night and to wait until

morning and talked to the morning officer, which I did.

      6.      On December 20, 2006, I got up in the morning and could hardy move. I was in extreme pain in my right leg, my shoulders and my head. I was dizzy; I was throwing up; I was sick.

      7.      At about 6:10am, on December 20, 2006, I went to the officer's desk and spoke with Defendant Grant. I told Defendant Grant my symptoms that I had that morning. I asked her to send me to health care. Defendant Grant's response was basically go screw yourself. She did not want to hear what I was saying. She would not send me to health care.

      8.      At approximately 7:00 a.m., I returned to the officer's desk and informed Defendant Grant of my continuing severe headaches, blurred vision and nausea. I asked to be sent to health care but Defendant Grant refused to send me to health care or to even call to determine whether I could be sent to health care.

      9.      At approximately 9:00am, I returned to the officer's desk because I was a porter in the housing unit and was suppose to work that morning. I begged Defendant Grant not to require me to perform my mopping and other cleaning duties. Once again telling her the condition I was in. She made me do my porter duties. I again asked her to send me to health care and she refused.

      10.      Around 12:20pm, I was scheduled to be in school but again I begged Defendant Grant not to require me to go to school because I was sick. I told her the pain I was in. Defendant Grant told me I had to go to my detail. I asked her to send me to health care and she refused to either send me or call health care to determine if I could be seen.

>       11.     At approximately 2:00 p.m. on December 20, 2006, I approached Defendant Chapman, who was working the afternoon shift and was at the officer's desk. I informed her of my medical conditions, i.e., that I had been suffering severe headaches, blurred vision and nausea for the past 24-hours and needed to be sent to health care. Defendant Chapman refused to send me to health care or to even call to determine whether I could be sent to health care.
>
>       12.     At approximately 5:00 p.m. on December 20, 2006, I requested Defendant Chapman to contact health care due to my continuing severe headaches, blurred vision and nausea. Defendant Chapman refused to send Plaintiff to health care or to even call to determine whether I could be sent to health care.
>
>       13.     At approximately 7:00 p.m. on December 20, 2006, I was found unconscious on my bed.

In December of 2006, defendant Chapman was a Resident Unit Officer (RUO). She was not assigned to any particular unit, but was instead a relief RUO, sometimes called a "rover." (Dkt. 55-4) (deposition of E. Chapman, p. 7). At 17:31 (or 5:31 p.m.), prisoner Mobley reported that her bunkie, plaintiff, was "down." Chapman and other staff responded immediately. (Dkt. 55-4, pp. 13-14). Chapman reported the events in a "Critical Incident Participation Report." (Dkt. 55-5). Plaintiff was unresponsive but breathing, albeit labored. *Id.* Plaintiff was taken from the unit to healthcare at 1750 hours. (Dkt. 55-4, p. 14). Chapman could not recall plaintiff speaking to her earlier in the day. (Dkt. 55-4, p. 27). Sharpe could not recall anything about plaintiff's medical needs. (Dkt. 55-6)

(deposition of M. Sharpe, p. 21). Defendant Grant also could not recall having any contacts with plaintiff regarding her medical needs. (Dkt. 55-7) (deposition of L. Grant, p. 14).

### III. ANALYSIS AND CONCLUSION

    A.    <u>Standard of Review</u>

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

Rule 56 limits the materials the Court may consider in deciding a motion under the rule: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (citation omitted). Moreover, affidavits must meet certain requirements:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed.R.Civ.P. 56(e)(1). In accordance with Rule 56(e), the Sixth Circuit has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded." *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993). Thus, in resolving a Rule 56 motion, the Court should not consider unsworn or uncertified documents, *id.*, unsworn statements, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-969 (6th Cir. 1991), inadmissible expert testimony, *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1280 (6th Cir. 1997), or hearsay evidence, *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222, 225-226 (6th Cir. 1994). Thus, "[a] party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine

issue of material fact." *Id.*, quoting, *Sperle v. Michigan Dept. of Corrections*, 297 F.3d 483, 495 (6th Cir. 2002) (citation and quotation marks omitted).

    B.    <u>Deliberate Indifference</u>

To establish a cause of action under § 1983, two essential elements are required: (1) there must be conduct committed by a person acting under color of state law, and (2) the conduct must deprive the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527 (1981); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Jones v. Duncan*, 840 F.2d 359, 361-62 (6th Cir. 1988). Defendants do not claim that the first prong of this test is disputed.

The Supreme Court has recognized the responsibility of the courts "to scrutinize claims of cruel and unusual confinement." *Rhodes v. Chapman*, 452 U.S. 337, 352 (1981). Included as a type of conduct that violates the Eighth Amendment is a prison official's deliberate indifference to a prisoner's serious medical needs. *See e.g.*, *Estelle v. Gamble*, 429 U.S. 97 (1976); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one. He must show that he had a serious medical need (objective prong) and he must show that a defendant, being aware of that need, acted with deliberate indifference to it (subjective prong). *Wilson v. Seiter*, 501 U.S. 294, 300 (1991).

A medical need is "serious" if it has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention. *Monmouth Co. Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.), *cert. denied*, 486 U.S. 1006 (1988). An Eighth Amendment claim may be premised on deliberate indifference to exposing an inmate to an unreasonable risk of serious harm in the future. *Dodson v. Wilkinson*, 2008 WL 5378017, *3 (6th Cir. 2008), citing, *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A medical need is objectively serious where a plaintiff's claims arise from an injury or illness "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897-900 (6th Cir. 2004). In such situations, the "plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated. Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time." *Blackmore*, 390 F.3d at 899-900.[1] In this case, plaintiff claims that the need for treatment earlier than her

---

[1] In *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001), the Court held that an inmate who complains that a delay in medical treatment is "sufficiently serious" so as to violate his constitutional rights, must present "verifying medical evidence" to establish the detrimental effect of the delay in medical treatment. As explained in *Blackmore*, however, *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers.

collapse was obvious and each of the defendants should have realized that she needed medical attention based on her complaints and symptoms; that is, "even a layperson would easily recognize the necessity for a doctor's attention." The undersigned finds that this test has been satisfied by plaintiff's proffer of evidence. Plaintiff has testified that she described her symptoms of being unable to move for periods of 15-20 minutes, dizziness, stabbing pains in her head, neck, and shoulders, and blurred/impaired vision, to each of the defendants in detail. While the obviousness of a risk is not conclusive and a prison official may show that the obvious escaped him, he would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). Contrary to defendants' view, the test is not whether it was obvious that, prior to plaintiff's collapse, she was suffering from a cerebral hemorrhage, stroke, and aneurysm, but rather, whether it was obvious that she required immediate medical attention. While merely complaining of pain symptoms may be insufficient to establish the "obvious" test, *see Jones v. Carberry*, 2010 WL 1172562, *5 (W.D. Mich. 2010), in the view of the

---

*Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury. *Blackmore*, 390 F.3d at 898, citing, *Napier*, 238 F.3d at 742.

undersigned, when informed of plaintiff's symptoms, a layperson would perceive the need for immediate medical attention. *See Cain v. Irvin*, 286 Fed.Appx. 920, 927 (6th Cir. 2008) (obviousness test is whether a layperson would perceive the need for immediate medical attention). Thus, plaintiff has established a genuine issue of material fact as to the objective prong of the deliberate indifference test.

The Court must now decide whether plaintiff has established a question of fact as to the second element of *Wilson*, which requires a showing that this particular defendant acted with deliberate indifference. "Deliberate indifference" has been variously defined by the federal courts that have considered prisoners' Eighth Amendment claims, but all agree that it is more than mere negligence and less than actual intent in the form of "malicious" or "sadistic" action. *Farmer v. Brennan*, 511 U.S. 825, 861 (1994); *see also Estelle*, 429 U.S. at 105-106 (a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim under the Eighth Amendment; "medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (deliberate indifference is the equivalent of "criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm"); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) ("[o]bduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference.").

As noted in *Estelle*, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992). The subjective component requires a plaintiff to "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001); *see also Harris v. City of Circleville*, 583 F.3d 356 (6th Cir. 2009). "Because government officials do not readily admit the subjective component of this test, it may be 'demonstrat[ed] in the usual ways, including inference from circumstantial evidence ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Dominguez v. Correctional Medical Services*, 555 F.3d 543, 550 (6th Cir. 2009), quoting, *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). Given the foregoing conclusions regarding the obvious need for medical treatment, the undersigned concludes that plaintiff has also established a genuine issue of material fact regarding the subjective prong of the deliberate indifference test.

C. <u>Qualified Immunity</u>

Defendants claim to be entitled to qualified immunity regarding their actions in this case. The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992), quoting, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defendants bear the burden of pleading qualified immunity, but plaintiff bears the burden of showing defendants are not entitled to qualified immunity. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002).

The Supreme Court had established a two-part test in order to determine whether qualified immunity was applicable to a particular situation. *Saucier v. Katz*, 533 U.S. 194 (2001). The first part of the test involved a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id*. at 201. If the first question was resolved in the affirmative then the court would decide "whether the right was clearly established." *Id*. If both questions are resolved in the affirmative, then the doctrine of qualified immunity does not apply and the case can proceed.

Recently, the Supreme Court revisited their decision in *Saucier* and

concluded that mandatory order of the two part test for determining if qualified immunity applied was no longer sound based on several factors including judicial economy. *Pearson v. Callahan*, — U.S. —, 129 S.Ct. 808 (2009). While not modifying the factors that should be considered in such a decision, the Court held that sometimes it makes sense to allow the second part of the test to be decided first and that such a decision may resolve the controversy without having to address the first part of the test. In *Pearson*, the § 1983 claim of the plaintiff was based on an allegedly unlawful search conducted by the defendant police officers. Without having to engage in the perhaps more complicated decision of determining whether plaintiff's constitutional rights had been violated, the Court found that the constitutional right claimed by plaintiff was not clearly established where lower court case law was consistent with the conduct of the officers and "principles of qualified immunity [should] shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." Plaintiff had a clearly established right to have her serious medical needs reasonably attended to and, when viewed in the light most favorable to plaintiff, the conduct of defendants, by not addressing the medical concerns that she informed them of, violated that right. The undersigned suggests that, given the foregoing conclusions regarding plaintiff's claims, the undersigned cannot say that

the remaining defendants are entitled to qualified immunity.[2]

## IV.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

---

[2] In addition, defendants rather perfunctorily present their qualified immunity defense. It is not sufficient for a party to mention a possible argument "in a most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  Indeed, a court need not make a party's case by scouring the various submissions to piece together appropriate arguments. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995).  And, the court is not obligated to make defendants' case for them or to "wade through and search the entire record" for some specific facts that might support their motion. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Simply, defendants have not satisfied their burden of coming forward with sufficient facts, or an explanation of applicable law, on which the court could possibly enter summary judgment in their favor on the basis of qualified immunity.

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 3, 2011

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

### CERTIFICATE OF SERVICE

I certify that on February 3, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Daniel E. Manville and Kevin R. Himebaugh.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov